**Norman ARBO**

v.

**Harold E. HEGSTROM, Connecticut State Jail Administrator.**

**Civ. No. 11340.**

United States District Court · D. Connecticut.

June 17, 1966.

William D. Graham, Hartford, Conn., for petitioner.

Arnold Markle, Chief Prosecuting Atty., Circuit Court, New Haven, Conn., Edward R. Smoragiewicz, Daniel E. Lynch, Hartford, Conn., for defendant.

BLUMENFELD, District Judge.

This is a petition for a writ of habeas corpus filed on March 23, 1966. Petitioner was arrested on January 17, 1966, on a charge of non-support in violation of § 53–304 Conn.Gen.Stats. (Supp.1964), and on the next day, unrepresented by counsel and unable to pay for one, he entered a plea of guilty and was sentenced to a term of one year in jail, the maximum penalty provided for under the statute. The central issue presented to this court for consideration is whether the state has an obligation to appoint counsel to represent an indigent accused of this particular non-felony offense.

This petition is properly brought in a United States District Court, state remedies having been exhausted in accordance with 28 U.S.C. § 2254. Arbo did not appeal from his conviction. However, he made a prompt application to the Superior Court for a writ of habeas corpus dated March 10, 1966. This application was rejected by the clerk of the Superior Court and Supreme Court of Errors because it was not accompanied by the necessary $22 filing fee. § 52–259 Conn.Gen.Stats. The clerk indicated that the fee is waived for indigent pris-

oners only when they are in state prison,[1] as distinguished from incarceration in the Hartford State Jail, the place of confinement for those sentenced to one year or less. § 54–120 Conn.Gen.Stats. Petitioner's avenues of review at the state level are effectively cut-off. United States ex rel. Rhyce v. Cummings, 233 F.2d 190 (2d Cir.), cert. denied, 352 U.S. 854, 77 S.Ct. 78, 1 L.Ed.2d 64 (1956). "[And] since one of the petitioner's claims is that he was improperly deprived of counsel, he has not waived the right to raise his constitutional issues by failing to appeal from his conviction. Williams v. Kaiser, 1945, 323 U.S. 471, 477, 65 S.Ct. 363, 89 L.Ed. 398 * * *." Id. at 192.

■ At the time this petition was filed, the petitioner was serving out his sentence in the state jail. During the hearing, the court suggested that he be admitted to bail pending the hearing and decision on whether a writ should issue. Counsel have orally informed the court that the petitioner has been admitted to bail. But that does not deprive this court of jurisdiction on the ground that the case has become moot. Reis v. United States Marshal, 192 F.Supp. 79, 83 (E.D.Pa. 1961). The order of commitment has not been set aside or modified. He is still subject to bail limits and "he might be thrown back in jail to finish serving the allegedly invalid sentence * * *." Jones v. Cunningham, 371 U.S. 236, 242, 83 S.Ct. 373, 377, 9 L.Ed. 2d 285 (1963). Whether Connecticut's law permits admission of a person serving a sentence to bail has not been decided, § 54–53 Conn.Gen.Stats., but his application for bail having been granted, the petitioner is subject to imprisonment for three years if he willfully fails to appear when legally called according to § 53–154 Conn.Gen.Stats.

At the evidentiary hearing on this matter, the following background facts were elicited. For five or six days prior to his arrest on January 17th, Arbo was working at Jack Moore's, a local car wash business. Although the salary was $1.25 an hour and he was able to work full time except when adverse weather conditions dampened customer demand, Arbo had not been there long enough to accumulate any funds and certainly could not afford to hire private counsel. He had held only occasional part-time jobs before. On the day following the arrest and after a night in jail, petitioner was advised, as one of a group of about forty, by the assistant clerk of the Circuit Court # 14, of his right to a continuance to obtain counsel. However, and this is conceded, Arbo was never told that the state would appoint counsel for him, nor was counsel ever appointed although it was within the discretion of the trial judge to designate the public defender as a representative. § 54–81a Conn.Gen.Stats. At sentencing, after a plea of guilty, the trial judge ignored the defendant's request for "a break" and followed the recommendation of Mr. Patti of the Family Relations Division in imposing the one year maximum.

■■ Certainly the petitioner cannot be said to have waived his right to counsel by the guilty plea. United States ex rel. Durocher v. LaVallee, 330 F.2d 303 (2d Cir.), cert. denied, 377 U.S. 998, 84 S.Ct. 1921, 12 L.Ed.2d 1048 (1964). Nor does his failure to make a request for counsel constitute a waiver of his right, if such a right exists. Carnley v. Cochran, 369 U.S. 506, 82 S.Ct. 884, 8 L.Ed.2d 70 (1962). Unless he had reason to know that counsel would be provided or had the imagination to make this request without so knowing, an indigent accused is not in a position to take advantage of an allowance of time to obtain assistance. Arbo's silence on the matter reflects no more than his ignorance of his rights.

1. "As to your request to enter a habeas corpus petition in behalf of a prisoner in the State Jail, I cannot accept the same without the entry fee.

"No provisions have been made for waiving of this fee, even though in habeas corpus petitions in behalf of prisoners in the State Prison, such fees are waived where the prisoner is indigent."

Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938).

■ Getting now to the ultimate question, I hold that, under the totality of circumstances presented here, the state had an absolute obligation to appoint counsel to aid the accused, Norman Arbo, in the preparation of his defense.

Any discussion of the right to counsel must of necessity commence with Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). That case held that the due process clause of the fourteenth amendment required that indigent state defendants in non-capital cases be given counsel. *Gideon* was convicted of breaking and entering a poolroom with the intent to commit a misdemeanor, a felony under Florida law. His persistent requests for a lawyer were denied, there being no precedent for such action in Florida law. The Supreme Court, Mr. Justice Black writing, responded that:

> "Reason and reflection require us to recognize that in our adversary system of criminal justice, *any* person haled into court, who is too poor to hire a lawyer, cannot be assured a fair trial unless counsel is provided for him. This seems to us to be an obvious truth * * * From the very beginning, our state and national constitutions and laws have laid great emphasis on procedural and substantive safeguards designed to assure fair trials before impartial tribunals in which *every* defendant stands equal before the law. This noble ideal cannot be realized if the poor man charged with *crime* has to face his accusers without a lawyer to assist him. (372 U.S. at 344, 83 S.Ct. at 796) (emphasis added).

The underlined language emphasizes the fact that the majority of the Court was thinking in terms of a pervasive rule to cover all criminal cases. There is nothing explicit in their opinions to indicate a limitation to felony cases, and, in fact,

the word "felony" does not appear even once in any of the four opinions except to describe the offense under which *Gideon* was prosecuted. The only significant limitation on the holding is suggested in the concurrence by Mr. Justice Harlan: "The special circumstances rule [wherein the facts underlying the particular case will be examined to determine how important the presence of an attorney would be, Betts v. Brady, 316 U.S. 455, 62 S.Ct. 1252, 86 L.Ed. 1595 (1942)] has been formally abandoned in capital cases, and the time has now come when it should be similarly abandoned in non-capital cases, at least as to offenses which, as the one involved here, carry the possibility of a substantial prison sentence. [*Gideon* received a five year term.] (Whether the rule should extend to *all* criminal cases need not now be decided.)" (372 U.S. at 351, 83 S.Ct. at 801).

Of course, from a pragmatic point of view, one can not help but struggle to find some rational line beyond which the absolute right to counsel becomes merely a privilege to be provided only as the particular tribunal sees fit. Although the administration of criminal justice is cloaked in abstract principles, these principles are jeopardized if the system could conceivably break under the sheer weight of the demands which it imposes. On a federal level, the recent Criminal Justice Act of 1964, 18 U.S.C. § 3006A, in recognition of the heavy burden which a requirement of counsel in every criminal case would impose, has made a practical and fair compromise with an absolute rule by prescribing appointment of counsel in other than "petty offense" cases.[2]

The facts of the present petition, however, do not demand an extension of Gideon v. Wainwright, even accepting the limiting construction of Mr. Justice Harlan. Certainly in Connecticut the crime of non-support carries "the possibility of a substantial prison sentence,"

**2.** 18 U.S.C. § 1(3) defines a petty offense as "any misdemeanor, the penalty for which does not exceed imprisonment for a period of six months or a fine of not more than $500, or both * * *."

and for Norman Arbo this possibility became reality. It would be a gross perversion of solid constitutional doctrine to find a rational distinction between one year in jail (a misdemeanor) and one year and a day in prison (a felony).[3] Evans v. Rives, 75 U.S.App.D.C. 242, 126 F.2d 633, 638 (1942). The Fifth Circuit has unhesitatingly refused to draw the line even at prosecutions resulting in six month and ninety day internments. McDonald v. Moore, 353 F.2d 106 (5th Cir. 1965); Harvey v. Mississippi, 340 F.2d 263 (5th Cir. 1965).

 If there is vitality left in the "special circumstances" approach in non-felony cases, its application here would necessitate the issuance of the writ. The single most relevant consideration under this test is the ability of the accused to fend for himself, without benefit of assistance from one trained in the law. Chewning v. Cunningham, 368 U.S. 443, 82 S.Ct. 498, 7 L.Ed.2d 442 (1962); Hudson v. North Carolina, 363 U.S. 697, 80 S.Ct. 1314, 4 L.Ed.2d 1500 (1960). Because Arbo never went to trial, it is not possible to know with certitude what type of defenses he might have presented had he been aided by the guiding hand of a technician. However, even on the merits, the Connecticut non-support statute doesn't permit conviction when the accused can show that "owing to physical incapacity or other good cause, he is *unable* to furnish such support." § 53–304(a) Conn.Gen.Stats. (Supp.1964) (Emphasis added). If the testimony as to Arbo's financial straits at the hearing on this petition is any indication, anyone taking into account the statutory elements of the crime could have presented a telling defense. See State v. Jordan, 142 Conn. 375, 114 A.2d 694 (1955). Furthermore, Arbo was convicted of this very same offense on two prior occasions since 1964, and counsel now raises a double jeopardy issue. I do not rule on the merits of these claims, but I mention them only to illustrate the manifold ways in which an attorney's advocacy can make a difference. See Chewning v. Cunningham, supra, 368 U.S. at 477, 82 S.Ct. 498 which discusses the latter problem raised in the context of a multiple offender charge. See also Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (U.S. July 13, 1966).

I conclude, therefore, that the failure of the state to apprise petitioner of his right to appointed counsel, and to grant him that right if it was then requested, amounted to a denial of due process as guaranteed by the fourteenth amendment.

### ORDER

A writ shall issue that the petitioner, Norman Arbo, shall be discharged from custody.

---

**3.** Ironic proof of this is in the fact that Connecticut only recently dropped the "felony" characterization of the crime of non-support. (1963 P.A. 497, § 1).